# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| DR. STEVEN ARKIN, a Florida resident, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 8:16-cv-00321-JDW-TBM |
| v. | ) ) | **CLASS ACTION** |
| INNOCUTIS HOLDINGS, LLC, CIPHER PHARMACEUTICALS US LLC and JOHN DOES 1-10, | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff, Dr. Steven Arkin, responds as follows to Defendants' Motion to Dismiss (Doc. 24). As argued below, the Court should deny the motion in its entirety.

### <u>Factual Allegations</u>

Plaintiff's Class Action Complaint, filed February 10, 2016, challenges Defendants' alleged practice of sending unsolicited facsimile advertisements in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005 ("JFPA"). (Doc. 1, Compl. ¶ 2). The Complaint alleges Defendants sent numerous fax advertisements to Plaintiff and a class of similarly situated persons, "including, but not limited to, the facsimile transmissions of an unsolicited advertisement on or [about] September 16, 2015," which Plaintiff attached as Exhibit A. (*Id.*)

The fax attached as Exhibit A to the Complaint announces "A BREAKTHROUGH SPOT TREATMENT FOR COLD SORE OUTBREAKS," "Introducing a new single-dose treatment that hits the target – every time," and states, "FIGHT COLD SORES BEFORE THEY START" with the prescription drug "Sitavig." (Doc. 1-1). The fax states that "For rebates and resources"

regarding Sitavig "visit www.Sigavig.com or contact Innocutis costumer service at info-@innocutis.com or 1-800-499-4468." (*Id.*) The fax states Sitavig is "Distributed By: Innocutis Holdings, LLC, Charleston SC 29401, 1-800-499-4468, www.innocutis.com." (*Id.*) The fax states the patent number for Sitavig and "®2013 Innocutis Holdings, LLC." (*Id.*) The bottom of the page contains the Innocutis logo and website address. (*Id.*) The fax contains no opt-out notice of any kind advising the recipient how to stop such faxes in the future. (*Id.*)

Plaintiff's Complaint alleges that the fax is an "unsolicited advertisement" in violation of the TCPA and that the opt-out notice fails to comply with regulations implementing the TCPA promulgated by the Federal Communications Commission ("FCC"), 47 C.F.R. § 64.1200(a)(4)(ii)–(iv), which precludes Defendants from asserting a defense of "established business relationship" or "prior express invitation or permission." (Compl. ¶¶ 30–31). Plaintiff alleges that Cipher Pharmaceuticals US LLC "acquired INNOCUTIS and its three branded dermatology products in 2015." (*Id.* ¶ 10).

Plaintiff seeks the relief authorized by the TCPA, 47 U.S.C. § 227(b)(3), consisting of injunctive relief and $500 per violation of the TCPA or the implementing regulations, which the Court may increase up to $1,500 if it finds the violations "willful or knowing." (*Id.* ¶ 5). Plaintiff seeks to represent a class of persons sent Defendants' fax advertisements during the four-year class period, where Defendants either "did not have prior express permission or invitation" to send the fax or where the fax "did not display a proper opt-out notice." (*Id.* ¶ 18). Plaintiff alleges the number of class members to be "at least forty." (*Id.* ¶ 19).

<u>Argument</u>

I.      **The motion to dismiss should be denied.**

Dismissal under Rule 12(b)(6) is warranted only if the plaintiff's claims are not even "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough that the district court

suspects the plaintiff will ultimately "fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). The "defendant bears the burden of showing that no claim has been presented." *Q±Food LLC v. Mitsubishi Fuso Truck of Am., Inc.*, 2015 WL 4603678, at *2 (D.N.J. July 30, 2015).

As argued below, the motion to dismiss should be denied under these standards because (1) the Complaint plausibly alleges that Defendants are "senders" as defined by the governing regulations issued by the Federal Communications Commission, (2) the fax attached to the Complaint is an advertisement as a matter of law, and (3) Plaintiff has statutory standing under the TCPA because he alleges the fax was transmitted to his fax machine and fax number.

### A.   Plaintiff adequately alleges Defendants are "senders" as defined by the governing FCC regulations.

Defendants argue the Complaint fails to allege the fax was "sent" by Defendants. (Defs.' Mem. at 6–8). This argument fails because the FCC regulations define "sender" for purposes of TCPA liability as a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). The FCC issued this regulation along with a suite of regulations implementing the JFPA in 2006. *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3808 ¶ 39 (Apr. 6, 2006). These regulations "became effective on August 1, 2006." *Machesney v. Lar-Bev of Howell, Inc.*, 2016 WL 1394648, at *18 (E.D. Mich. Apr. 7, 2016).

The allegations of the Complaint satisfy both prongs of the "sender" definition. First, it alleges that the fax was sent "by or on behalf of" the two Defendants. (Compl. ¶¶ 18, 21). The Complaint also alleges that "the Defendants' and Defendants' agents' computers and business records will enable the Plaintiff to readily identify class members and establish liability and

damages." (*Id.* ¶ 25(e)). There are only two named Defendants, Innocutis Holdings, LLC and Cipher Pharmaceuticals US LLC, and the Complaint alleges Plaintiff alleges that Cipher Pharmaceuticals US LLC "acquired INNOCUTIS and its three branded dermatology products in 2015." (*Id.* ¶ 10).

Second, the Complaint alleges the fax advertises Defendants' "goods or services." (Compl. ¶¶ 2, 13, 34). The Complaint alleges Defendants "receive some or all of the revenues from the sale of the products, goods and services advertised on Exhibit A, and Defendants profit and benefit from the sale of the products, goods and services advertised on Exhibit A." (Compl. ¶ 13). The fax itself states Sitavig is distributed by Innocutis Holdings, LLC, which owns the Sitavig trademark (Doc. 1-1), and the Complaint alleges Cipher acquired Innocutis and its rights to Sitavig in 2015 (Compl. ¶ 10). Plaintiff has adequately alleged that the "goods or services" being promoted are the goods and services of these two Defendants.

Defendants argue a plaintiff must show the fax was sent "on behalf of" the defendant, effectively reading the "or whose goods or services" out of the regulation, based on a single sentence in *Sarris*. (Defs.' Mem. at 6 n.2). Defendants are taking this fragment out of context because *Sarris* did not apply § 64.1200(f)(10). Since the faxes at issue in *Sarris* were sent in 2005, the Eleventh Circuit applied an FCC ruling from 1995 on the issue, which created the "on behalf of" standard. 781 F.3d at 12854–55 & n.9. The Eleventh Circuit noted the existence of § 64.1200(f)(10), but held "this regulation was not promulgated until after [plaintiff's] cause of action accrued in 2005" and so the 1995 ruling applied. *Id.* The same is true for *Bridgeview Health Care Ctr., Ltd. v. Clark*, --- F.3d ---, 2016 WL 1085233 (7th Cir. Mar. 21, 2016), which refused to apply the "or whose goods or services" prong, but involved faxes sent "on June 27 and June 28, 2006." *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206,

at *1 (N.D. Ill. Mar. 19, 2013). Anything the Seventh Circuit said about § 64.1200(f)(10) in *Bridgeview* is dicta. The FCC issued the regulation defining "sender" pursuant to its authority to "implement" the TCPA, 47 U.S.C. § 227(b)(2), and it is binding in this Court. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119–20 (11th Cir. 2014); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015).

The only circuit court of appeals that has actually applied § 64.1200(f)(10) to faxes sent after its August 2006 effective date is the Sixth Circuit in *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 636 (6th Cir. 2015). In *Imhoff*, faxes advertising the defendant's restaurant were sent in November and December 2006. *Id.* at 630. The Sixth Circuit applied the regulation, holding "[t]he pertinent FCC regulations are explicit that the party whose goods or services are advertised . . . is the sender" and held the defendant "directly liable" solely because the faxes advertised its restaurant. *Id.* at 637. The Sixth Circuit held § 64.1200(f)(10) is binding and that the defendant could not challenge its validity in private litigation "because the Hobbs Act confers jurisdiction on Courts of Appeal to review FCC regulations only by direct appeal from the FCC." *Id.* On remand, the district court certified the class, holding "the TCPA provides for direct liability against a defendant whose goods or services are advertised in the fax at issue, even if that party did not broadcast the fax." *Avio, Inc. v. Alfoccino, Inc.*, 2015 WL 8731983, at *3 (E.D. Mich. Dec. 14, 2015).

Another district court denied a motion to dismiss based on the plain language of the "sender" definition in *Addison Automatics, Inc. v. RTC Grp., Inc.*, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013), holding with respect to faxes sent in 2009 that "[s]ince Defendants Microsoft's, Intel's and Avnet's goods or services are advertised in the fax at issue, they are

'senders' under the FCC's interpretation of this section of the TCPA. Therefore, Plaintiff has adequately alleged that they can be liable for the alleged violation of the TCPA."

In sum, Plaintiff has adequately alleged each Defendant is a "sender" under the governing FCC regulations, both because the faxes were sent "on behalf of" Defendants and because the "goods or services" advertised are Defendants' goods and services. At the very least, Plaintiff has a "plausible" case and should be allowed discovery.

Finally, contrary to Defendants' claim, there is no improper "lumping" of multiple defendants, as in *Joseph v. Bernstein*, 612 F. App'x 551, 552 (11th Cir. 2015), where the plaintiff sued "two insurance brokers and three insurance companies" for fraud without specifying which defendant made which fraudulent representation. Defendants' other cases are distinguishable. In *Urban Elevator Serv., LLC v. Stryker Lubricant Distrib. Inc.*, 2015 WL 6736676, at *2 (N.D. Ill. Nov. 4, 2015), the court dismissed one of three defendants with leave to amend to allege the defendant was "working in collaboration with the other defendants to market Sinopec products." Plaintiff's Complaint already alleges that both Defendants "profit and benefit from the sale of the products, goods and services advertised on Exhibit A." (Compl. ¶ 13). In *Cellco P'ship v. Plaza Resorts Inc.*, 2013 WL 5436553, at *3 (S.D. Fla. Sept. 27, 2013), there were at least four unrelated defendants, and it was unclear "under what theory of liability Plaintiff [was] proceeding" against each one. Here, Plaintiff is proceeding to hold both named Defendants directly liable as "senders" as defined in § 64.1200(f)(10). In *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1374 (S.D. Fla. 2011), the plaintiff named two "separate and distinct legal entities" for "numerous" phone calls without attempting to delineate "which Defendant made each call . . . ." Here, it is unclear whether the two Defendants are in fact "separate and distinct"

following the 2015 acquisition of Innocutis by Cipher, and Plaintiff has thus far identified only the single fax attached to the Complaint.

>       **B.      The fax attached to the Complaint is an "advertisement" as a matter of law.**

Defendants argue the case must be dismissed because the fax attached to the Complaint—which is the only one of Defendants' fax advertisements Plaintiff has so far obtained—is not even "plausibly" an "advertisement." (Defs.' Mem. at 8–10). Not only should the Court deny the motion to dismiss, it should hold the fax attached to the Complaint is an advertisement as a matter of law.

The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The FCC regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Thus, a fax is an advertisement if it promotes (1) the "commercial availability" of property, goods, or services or (2) the "quality" of property, goods, or services. The fax attached to the Complaint does both.

First, the fax advertises Sitavig's "commercial availability" by "introducing" the product to the market, describing it as a "new" treatment, offering "rebates" to incentivize purchases of the drug, and advising that a "[m]ajority of Insured patients will pay a tier 2 branded copayment" when purchasing the drug. (Doc. 1-1). A "rebate" is "[a] return of part of a payment, serving as a discount or reduction" or "[a]n amount of money that is paid back when someone has overpaid." Black's Law Dictionary (10th ed. 2014). A rebate entails the payment of money in a commercial transaction. Similarly, the information about copayments is indicia of commercial availability; there is no "copayment" without "payment," and payment entails a commercial transaction. The

fax also advises that Sitavig is patented, that it is distributed by "Innocutis Holdings, LLC," and that the name Sitavig is a trademark of "Innocutis Holdings, LLC," and states "contact Innocutis customer service" for more information. (*Id.*) Patents, distribution rights, trademarks, and customer service agents are indicia of a commercially available product.

Second, the fax touts the "quality" of Sitavig, announcing it as "A BREAKTHROUGH SPOT TREATMENT FOR COLD SORE OUTBREAKS." (*Id.*) Describing a product as a "breakthrough" is a comment on the "quality" of the product. The fax claims Sitavig is "a new single-dose treatment that hits the target – every time." (*Id.*) Describing a drug as "single-dose," as opposed to multiple dose, and that it works "every time" are comments on the drug's efficacy, the most important "quality" a medication can have. The catchphrase that Sitavig "fight[s] cold sores before they start" is classic advertising language. (*Id.*)

Defendants do not mention any of the advertising language discussed above, instead characterizing the fax as merely "provid[ing] important information concerning the drug's safety, uses, and general prescribing information," relying on three easily distinguishable cases. (Defs.' Mem. at 9). *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015), is inapposite because the Sixth Circuit affirmed summary judgment—not dismissal for failure to state a claim—on the basis that the record evidence showed the fax at issue was sent by a "pharmacy benefits manager" to advise doctors about which medications were on its "formulary," and were therefore lower cost for patients. The *Medco* fax did not state what conditions the drugs were used to treat or state anything about their efficacy, and the defendant did not manufacture or sell the drugs. *Id.* The Sixth Circuit held the fax had no "commercial" aspect because the defendant "ha[d] no interest whatsoever in soliciting business" with the fax

8

and it was "not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] or others similarly situated," since the defendant did not manufacture or sell the medications. *Id.*

In this case, unlike in *Medco*, the fax states that Sitavig is "distributed by" Innocutis Holdings LLC, and states that "rebates" and more information about Sitavig are available through "Innocutis customer service." (Doc. 1-1). It is at least "plausible" that Defendants have the "profit motive" that was lacking in *Medco* because they sell the product in the fax. The district court in *Physicians Healthsource, Inc. v. Salix Pharm., Inc.*, 2015 WL 4713266, at *3 & n.1 (E.D.N.C. Aug. 7, 2015), distinguished *Medco* on this very basis in a case where the defendant had "a pecuniary interest in [doctors] prescribing Apriso and Solesta to patients" where it was "the manufacturer of the drugs in question." The court held the defendant's "commercial motivations for sending the faxes to plaintiff are not 'ancillary, remote, and hypothetical,'" as in *Medco*, and denied the defendant's motion for judgment on the pleadings. *Id.* This Court should distinguish *Medco* on the same basis and deny Defendants' motion.

Defendants correctly note that *Physicians Healthsource v. Janssen Pharm., Inc.*, 2013 WL 486207 (D.N.J. Feb. 6, 2013) ("*Janssen I*"), dismissed on the basis that a fax stating a drug had been reclassified for insurance purposes was not an advertisement. (Defs.' Mem. at 9). They fail to mention, however, that the court subsequently granted leave to amend to allege the "informational" veneer of the fax was a "pretext," *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2013 WL 2460345, at *4 (D.N.J. June 6, 2013) ("*Janssen II*"), denied the defendant's motion for summary judgment, holding evidence gathered in discovery regarding the timing of the fax and its genesis in the defendant's marketing department raised an issue of "whether there is an advertising intent" behind the fax, *Physicians Healthsource v. Janssen Pharm., Inc.*, 2015 WL 3827579, at *1, *4 (D.N.J. June 19, 2015) ("*Janssen III*"), and denied the

defendant's motion to reconsider arguing that *Medco* held a court is limited to the "four corners" of a fax in deciding the advertisement question, recognizing that "the Sixth Circuit specifically went beyond the four corners of the faxes" in *Medco*, *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2015 WL 5164821, at *4 (D.N.J. Sept. 2, 2015) ("*Janssen IV*"). If anything, the *Janssen* line of cases stands for the proposition that a defendant's claim that a fax is purely "informational" cannot be decided on the pleadings, and the plaintiff should be permitted discovery into the circumstances under which it was sent. *See also Physicians Healthsource v. Stryker Sales*, 2014 WL 7109630, at *8 (W.D. Mich. Dec. 12, 2014) (holding at summary judgment that court need not "put on evidentiary blinders" in deciding advertisement issue).

Defendants cite *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 2015 WL 144728 (D. Conn. Jan. 12, 2015),[1] where the district court dismissed on a fax inviting doctors to attend a free dinner meeting to discuss how to diagnose a medical condition. The fax did not mention any drug, and there was no drug available to treat the condition when the fax was sent. *Id.* at *5. The district court held the fax was not an advertisement merely because the pharmaceutical company that hosted the dinner had a drug in the development pipeline to treat the condition. *Id.* In contrast, the fax in this case advertises by name a particular commercially available medication, "introducing" it as a "breakthrough," offering "rebates" on its purchase, and touting its efficacy. *Boehringer* is easily distinguishable on these facts.

In sum, the Court should deny Defendants' motion to dismiss on the basis that the fax attached to the Complaint is not an advertisement and hold as a matter of law that the fax advertises both the "commercial availability" and the "quality" of Sitavig.

### D.    Plaintiff has statutory standing to sue under the TCPA.

---

[1] *Boehringer* is on appeal to the Second Circuit, No. 15-288, and was argued September 29, 2015.

Defendants argue the case must be dismissed because Plaintiff fails to allege "statutory standing" to sue under the TCPA. (Defs.' Mem. at 10). Defendants do not argue Plaintiff lacks Article III standing. (*Id.* at 11 n.6). As the Court recognized in denying Defendants' motion to stay, Plaintiff's allegations that Defendants "transmitted by telephone facsimile machine a facsimile to Plaintiff" and that "Plaintiff had not invited or given permission to Defendants to send the faxes" are "sufficient to confer Article III standing as a 'concrete and personalized injury'" under the Eleventh Circuit's decision in *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015). (Doc. 23, Order at 3). For the same reasons Plaintiff has Article III standing, Plaintiff has statutory standing as well.

In *Sarris*, the Eleventh Circuit held that "where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Sarris*, 781 F.3d at 1251. The court held "[t]he TCPA, in this instance, creates such a cognizable right" because it is intended "to protect citizens from the loss of the use of their fax machines during the transmission of fax data" and creates a private right of action for statutory damages with no requirement of "monetary loss" by the plaintiff. *Id.* at 1252. The Eleventh Circuit held the fax at issue was "successfully transmitted" to the plaintiff and that "the transmission occupied the telephone line and fax machine of" the plaintiff, which is "among the injuries to be prevented by the statute," giving the plaintiff standing to sue under the TCPA (and Article III standing). *Id.*

In this case, Plaintiff alleges that "Defendants transmitted by telephone facsimile machine a facsimile to Plaintiff," and that "[a] copy of the facsimile is attached hereto as Exhibit A." (Compl. ¶ 12). It alleges "Plaintiff received the same faxes" as the rest of the putative class (*id.*

11

¶ 21), and that Defendants sent the advertisements "via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class" (*id.* ¶ 30). It alleges that "[r]eceiving the Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendants' faxes," that the faxes "used the Plaintiff's and the other class members' telephone lines and fax machine[s]," that they "cost the Plaintiff and the other class members time" that "otherwise would have been spent on the Plaintiff's and the other class members' business activities," and that they "unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone." (*Id.* ¶ 35).

These allegations are more than sufficient under *Sarris*. Defendants argue that *Sarris* requires Plaintiff to fit into one of three rigid "categories": (1) the owner of the receiving fax machine, (2) the subscriber of the receiving telephone line, or (3) the person "to whom the fax was directed and who read the fax." (Defs.' Mem. at 10 & 11 n.6). *Sarris* said nothing about who owned the fax machine, or was the subscriber of the fax line, or to whom the fax was "directed" (which as in this case was no one, since the fax was not addressed to anyone).

Nor does the TCPA mention these manufactured "categories." Congress broadly provided that a "person or entity" may sue for statutory damages and injunctive relief to enforce the TCPA. 47 U.S.C. § 227(b)(3). Federal courts have consistently rejected attempts to put artificial standing limits on this provision, for example, rejecting the argument that a plaintiff must be the fax-machine owner, *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014); *Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 491 (7th Cir. 2014), or must be the "intended recipient," *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 632 (6th Cir. 2015); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, 2014 WL 2946421, at *11,

n.12 (W.D. Ky. June 30, 2014); *Brodsky v. HumanaDental Ins. Co.*, 2014 WL 4813147, at *3 (N.D. Ill. Sept. 29, 2014).

The Third Circuit recently rejected the "intended recipient" argument in a TCPA action that involved telephone calls, not faxes, but was brought pursuant to the same private cause of action in § 227(b)(3). *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015). The Third Circuit rejected the notion "that the caller's intent circumscribes standing," holding under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 & n.4 (2014), that any person within the "zone of interests" designed to be protected by the TCPA has standing to sue. *Id.* Plaintiff recognizes the Eleventh Circuit did not expressly use the term "zone of interests" in *Sarris*, but that is effectively the standard it adopted by focusing on the legislative intent to protect all persons from the unwanted "occupation" of their fax machines and fax lines. *Sarris*, 781 F.3d at 1252. The Complaint in this case clearly brings Plaintiff into that zone of interests by alleging Defendants' fax advertisements were "transmitted . . . to Plaintiff," using "the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class," causing "los[t] paper and toner," using "Plaintiff's and the other class members' telephone lines and fax machine[s]," costing "Plaintiff and the other class members time" that could have been spent on "business activities," and "interrupt[ing] the Plaintiff's and other class members' privacy interests in being left alone." (Compl. ¶¶ 12, 30, 35).

The two district court cases Defendants cite are inapposite. In *Kopff v. World Research Grp., LLC*, 568 F. Supp. 2d 39, 42 (D.D.C. 2008), the fax was addressed to "Gary Kopff, by name," and the district court held Judy Kopff, his wife and assistant, lacked standing to sue. *Id.* The fax in this case, like most junk faxes, is addressed to no one. (Doc. 1-1). In *J2 Global Commc'ns, Inc. v. Protus IP Sols.*, 2010 WL 9446806, at *7 (C.D. Cal. Oct. 1, 2010), two

competing fax broadcasters who provided "fax-to-email" services tried to assert their customers' rights to sue under the TCPA, which the court disallowed. It has nothing to do with this case.

In sum, Plaintiff has adequately alleged he is a "person or entity" within the zone of interests the TCPA was designed to protect, having alleged that Defendants' faxes occupied his fax machine and fax line under *Sarris*. Plaintiff has alleged both statutory standing to sue under the TCPA and Article III standing, and the motion to dismiss must be denied.

## II.   The motion to strike class allegations should be denied.

"Class certification is normal" in TCPA cases "because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013). These cases typically involve thousands of identical violations, making them "an archetypical example of a case in which the class action mechanism is superior to that of individual litigation of each claim." *Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.*, 86 Mass. App. Ct. 164, 166 (2014). Courts in this circuit regularly certify TCPA fax classes. *See Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. Aug. 5, 2015), on remand from 781 F.3d 1245 (11th Cir. 2014); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679 (S.D. Fla. 2014); *A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC*, 2013 WL 3463489 (S.D. Fla. July 3, 2013).

Nevertheless, Defendants move to strike Plaintiff's class allegations. (Defs.' Mem. at 12–15). Motions to strike are considered "drastic" and are disfavored by the courts. *Shamblin v. Obama For Am.*, 2014 WL 631931, at *2 (M.D. Fla. Feb. 18, 2014) (denying motion to strike TCPA class allegations) (quoting *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002)). Generally, "a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the

controversy, may confuse the issues, or otherwise prejudice a party." *Id.* (quoting *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995)).

On a motion to strike class allegations, the court treats all well pleaded facts as true. *Daisy, Inc. v. Pollo Operations, Inc.*, 2015 WL 4635114, at *3 (M.D. Fla. Aug. 3, 2015) (denying motion to strike TCPA fax class allegations) (citing *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002)). A motion to strike will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Id.* (citing *Harvey v. Home Depot U.S.A., Inc.*, 2005 WL 1421170 (M.D. Fla. June 17, 2005)).

Motions to strike class allegations are almost always "premature," with the courts "declin[ing] to make a class certification determination without the filing of a formal motion for class certification." *Desmond v. CitiMortgage, Inc.*, 2015 WL 845571, at *2 (S.D. Fla. Feb. 25, 2015) (denying motion to strike class allegations in TCPA case). Courts tend to deny such motions because "[w]hether Plaintiff's claim deserves class treatment is a fact-dependent inquiry unsuitable for a motion to dismiss or strike." *Id.*; *see also Chaney v. Crystal Beach Capital, LLC*, 2011 WL 17639, at *2 (M.D. Fla. Jan. 4, 2011) ("The question of class certification is generally not addressed on a motion to dismiss."); *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *3 (S.D. Fla. Nov. 26, 2007) ("To dismiss Plaintiff's class allegation before discovery would be an acknowledgment by this court that class certification is impossible, an assertion that this Court is not inclined to make."); *Oginski v. Paragon Properties of Costa Rica, LLC*, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011) ("Defendants' arguments related to Plaintiff['s] class allegations are better suited to an opposition to a motion for class certification, rather than as a basis for a motion to dismiss."); *Smith v. Rainey*, 2011 WL 4352179, at *3 (M.D. Fla. Sept. 16, 2011)

("[T]he Court agrees with Plaintiffs that compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim.").

This case was filed February 10, 2016, and discovery has only just begun. Without discovery into Defendants' faxing activity, striking Plaintiff's class allegations would clearly be premature. *Abdallah v. Coca-Cola Co.*, 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999) (denying motion to strike class allegations, holding "the shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form"); *Abella v. Student Aid Ctr., Inc.*, 2015 WL 6599747, at *3 (E.D. Pa. Oct. 30, 2015) (denying motion to strike class allegations in TCPA action, holding "a plaintiff may generally conduct discovery relevant to the Rule 23 class certification requirements").

Defendants rely heavily on *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *3 (E.D. Mo. Jan. 24, 2013), but that case is distinguishable because the defendant moved to strike "after limited discovery" showed the faxes "were an aberration instead of a blast faxing campaign." *See Geismann v. Am. Homepatient, Inc.*, 2015 WL 3548803, at *5 (E.D. Mo. June 8, 2015) (distinguishing *Lindsay* and denying motion to strike allegedly "fail-safe" class definition in TCPA fax case); *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, 2013 WL 1076540, at *6 (E.D. Mo. Mar.13, 2013) (same). There is no such record here. In any case, the "fail-safe" objection "is not a basis on which to strike Plaintiff's class allegations prior to the certification stage." *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (holding fail-safe issue "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis")).

Moreover, Defendants are assuming Plaintiff will move to certify the same class alleged in the Complaint following discovery. On the contrary, the usual process in TCPA cases is to allege a broad class definition in the Complaint, conduct discovery into the defendant's faxing activity during the class period, and then move to certify a more focused class definition referencing the content of the faxes gathered in discovery. For example, in *Chapman v. Wagener Equities, Inc.*, 2014 WL 540250, at *1 (N.D. Ill. Feb. 11, 2014), the plaintiff's complaint defined the class as follows:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes and (4) with whom Defendant did not have an established business relationship.

Following discovery, the plaintiff moved to certify a class definition referring to the content of the relevant faxes, as follows:

> All persons who were successfully sent a facsimile from "Wagener Equities" on November 9, 2006, or November 10, 2006, stating that people "Looking for Industrial Property" should "Go To: www.FindIndustrialRE.com."

*Id.* at *3. The district court certified the class, and the Seventh Circuit found no reason to disturb that ruling. *Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).

In this case, as in *Chapman*, once Plaintiff completes discovery into the various fax advertisements Defendants sent during the class period, Plaintiff anticipates it will move to certify a class definition that references specific common language on the faxes.[2] Plaintiff cannot do so at this stage because there has been no discovery. Thus, the Court should deny the motion

---

[2] *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits."); *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) (court retains "the ability, and perhaps even a duty, to alter or amend a certification decision" as case develops). A plaintiff need not amend his complaint to modify the class definition. *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015).

to strike as premature. *Abdallah*, 1999 WL 527835, at *1. Even where a district court is "not optimistic" the plaintiff will be able to achieve class certification, a motion to strike "when no discovery has been undertaken" is almost always premature. *Harris v. Reliable Reports Inc.*, 2014 WL 931070, at *9 (N.D. Ind. Mar. 10, 2014) (holding even if class certification was unlikely, plaintiff "must at least be allowed to try"). That is particularly true in a TCPA fax case like this case, a context in which class certification is "normal." *Turza*, 728 F.3d at 683.

**<u>Conclusion</u>**

The Court should deny Defendants' motion to dismiss because (1) Plaintiff adequately alleges the fax attached to the Complaint was sent "on behalf of" Defendants and advertises Defendants' "goods or services," (2) the fax is an "advertisement" for the prescription drug Sitavig as a matter of law, and (3) Plaintiff has statutory standing to sue under the Eleventh Circuit's decision in *Sarris*. The motion to strike class allegation should be denied as premature. After discovery into the universe of fax advertisements sent by Defendants is complete, Plaintiff will likely modify the class definition to focus on common language in the faxes.

Respectfully submitted,

DR. STEVEN ARKIN, individually and as the representative of a class of similarly-situated persons,

By: <u>s/ Ryan M. Kelly</u>
    Ryan M. Kelly – FL Bar No. 90110

Ryan M. Kelly
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501
rkelly@andersonwanca.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 20, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/Ryan M. Kelly
Ryan M. Kelly – FL Bar No. 90110